HAWKINS *v.* GRAY.

Opinion delivered March 19, 1917.

1.  GIFTS—CONVEYANCE TO MEMBER OF FAMILY—ADVICE OF THIRD PARTY
    NOT NECESSARY.—The advice of a third person to a donor is not a
    necessary condition to the validity of a conveyance between parties
    occupying confidential relations toward each other.
2.  GIFTS—DEED TO LAND—UNDUE INFLUENCE.—Deceased, an old man,
    and blind from cancer, deeded certain property to his daughter, ap-
    pellant, with whom he was living. *Held,* under the evidence that the
    deed was valid and not brought about by undue influence.

Appeal from Conway Chancery Court; *Jordan Sel-
lers,* Chancellor; reversed.

*W. P. Strait,* for appellant.

1.  Mr. Gray's mental capacity to execute the deed
was completely established by uncontradicted testimony.
95 Ark. 159; 87 *Id.* 273; *Ib.* 148; 49 *Id.* 367; 78 *Id.* 420; 85
*Id.* 363; 119 *Id.* 468; 2 Pom. Eq. Jur. (3 ed.), § 947, etc.

2.  There was no undue influence nor coercion. 78
Ark. 420; 49 *Id.* 367.

3.  No independent advice was needed or necessary.
49 Ark. 367; 78 *Id.* 425; 86 *Id.* 363; 95 *Id.* 523; 119 *Id.* 466;
129 U. S. 663; 173 *Id.* 17; 16 L. R. A. (N. S.) 1087. There
was ample consideration proven and the deed should be
sustained.

*Sellers & Sellers,* for appellees.

1.  There are unexplained indications of actual and
intentional fraud on the part of appellant. At least bad
faith is shown. The evidence shows mental incapacity
also. 17 Cyc. 808; 21 How. (U. S.) 493; 45 Am. St. 94; 43
Mo. 395; 12 La. Ann. 401; 35 *Id.* 873; 46 Mo. 423.

2.  Mr. Gray was suffering from senile dementia. 5
Pepper's System of Medicine, 174; 15 S. E. 146; 46 Am.
Law Rep. 439; 39 *Id.* 484.

3.  The relationship of the parties was such that ap-
pellant could not accept the deed, although he was wholly
incompetent as the proof shows. 26 Ark. 605; 40 *Id.* 28;
15 *Id.* 597; 69 L. R. A. 393; 72 Atl. 973; 114 Pac. 246; 93

N. Y. S. 192; 78 N. W. 1011; 161 S. W. 535; 9 Cyc. 456; 38 Am. Rep. 388, note; 89 Am. St. 203-4, notes; 76 Fed. 907, 908; 75 N. W. 400; 78 *Id.* 1009; 10 So. 129; 156 N. Y. 341, 353; 80 N. W. 686; 36 Atl. 177; 33 S. E. 519; 60 Am. Rep. 175; 100 Am. Dec. 314-15, 322; 2 Am. St. 359; 45 Atl. 767; 66 N. Y. S. 24; 132 Pac. 543; 28 Pac. 786-7. Independent, disinterested advice must be given. Cases, *supra;* 13 Enc. Ev. 359; 59 Atl. 466-7-8-9, etc.; 18 N. W. 922; 75 Ala. 566. See also 15 Ark. 555; 40 *Id.* 28; 102 *Id.* 232; 123 *Id.* 134.

HART, J. Both appellant, Minnie Hawkins, and appellees, Annie Gray, John Gray, Fannie Humphries and Nellie Watson, are children of Jesse Gray, deceased. This bill was filed in the chancery court by appellees against appellant to set aside a conveyance of a house and lot to her by her father.

Jesse Gray died on January 20, 1916, and was eighty-three years old at the time of his death. He was a man of limited education, but of considerable force of character. At one time he had owned a valuable river bottom farm, which had fallen into the Arkansas River by reason of that river having changed its course. Gray had property of the value of about $7,000, which consisted of a business house and two residences situated in the town of Morrilton, Arkansas. The larger residence, which is the subject-matter of this litigation, was his homestead, and its value was variously estimated at from one thousand to one thousand five hundred dollars. He lived with Mrs. Minnie Hawkins, the appellant, about eleven years prior to his death. She kept house for him before she was married. During most of this time he was afflicted with a cancer upon his face which gradually grew worse until, something like two years before his death, it destroyed his eyesight. After he became blind, or nearly so, his daughter, Annie Gray, took charge of his business and collected his rents. The sum of $10 per month was paid to appellant toward the support of their father.

About two months before his death, Jesse Gray made a deed to his homestead to the appellant. The chancellor found that the deed was invalid and entered a decree canceling and setting it aside. The case is here on appeal.

It is first sought to uphold the decree of the chancellor on the ground that the facts recited created a confidential relation which made the deed *prima facie* void because the grantor did not have independent advice at the time he executed the deed. In other words, it is claimed that the deed should be held void merely because Jesse Gray had not independent advice at the time he executed it.

(1) The cases on the subject in this State do not go to the extent of rendering void all gifts between parties occupying confidential relation to each other where the donor did not receive independent advice. The question of whether or not such advice was given is a material one to be considered with other surrounding facts and circumstances, such as the nature and purpose of the gift, and the condition and relation of the parties; but the advice of a third person to the donor is not a necessary condition to the validity of a conveyance between parties occupying confidential relations toward each other. *Giers* v. *Hudson,* 102 Ark. 232; *Rogers* v. *Cunningham,* 119 Ark. 468; *Boyd* v. *Boyd,* 123 Ark. 134; *Boggianna* v. *Anderson,* 78 Ark. 420.

In *Giers* v. *Hudson,* a daughter, twenty-two years of age and unmarried, but who had always lived with her father, conveyed property to him. The conveyance was upheld, although she had no independent advice. The court adopted the general rule that in such cases the circumstances attending the transaction should be jealously and carefully scrutinized by the court in order to ascertain whether there had been undue influence in procuring it, and the court held that unless it was found to have been made voluntarily and with a full understanding of the facts, it would be invalidated.

In the later cases of *Rogers* v. *Cunningham* and *Boyd* v. *Boyd,* the gift was from parent to child, and while there was no.formal discussion of whether or not the lack of independent advice made the gift avoidable, the effect of both decisions was to hold that the deeds should not be declared void merely because the donor had not independent competent advice on the subject. Whatever may be the rule elsewhere, it is the settled law of this State that independent advice is not necessary to the validity of a deed of gift between parties occupying confidential relations.

(2)    This brings us to the question of whether or not Jesse Gray had sufficient mental capacity to execute the deed and as to whether or not its execution was procured by undue influence on the part of the appellant, his daughter. After a careful consideration of the testimony we have come to the conclusion that there is an entire absence of undue influence in procuring the deed and that the grantor was capable of understanding the nature and effect of conveying his property to his daughter.

It is true that according to the testimony of the appellees themselves and that of one of his grandchildren, Jessie Gray was not mentally capable of understanding what he was doing when he executed the deed to his daughter. They all stated that the cancer had so progressed that it destroyed his eyesight about two years before he died, and from that time on he suffered severe pain and was not capable of transacting any business. None of these children, however, resided with him or visited him except at infrequent intervals. They also stated that appellant had told them on the occasions they did visit their father that his mind was not good and that he was incapable of transacting business. Appellant denies this, however, and states that her father fully understood what he was doing when he conveyed the property to her. She stated that on other occasions before that time he had wanted to make the deed but that she and her hus-

band had objected because they feared that the other children would not like it.

It is certain that appellant waited on her father faithfully during all the time that he lived with her. She said that during his blindness she was paid $10 a month out of his rents in order that she might secure household help so as to be able to devote more time and attention to her father. It was necessary that his eye be bathed several times during the day, and his daughter was required to wait upon him constantly. Offensive odors emanated from the cancer, so that it was necessary to constantly use disinfectants in the house. Appellant was very devoted to her father throughout his long years of suffering and gave him every care and attention that would tend to promote his comfort or insure his happiness. That he appreciated the care and attention his daughter had given him is shown by the fact that he had on other occasions wanted to deed her the house and lot in question. This fact is established not only by appellant's own testimony, but by that of other disinterested witnesses.

The justice of the peace, who took Gray's acknowledgment to the deed, had known him for many years. He stated that Gray had told him about six months before that he wished to convey his home place to his daughter in appreciation of her care for him in his sickness and old age.

Another friend of the family who had known Gray for the greater part of his life, testified that he had told him the same thing several years before his death. Four women who were neighbors to him testified that they had, during the time Gray resided with appellant, made frequent visits to the house and knew that appellant had given him every care and attention that was necessary for his comfort. They said that although he suffered severe pain at times from his cancer, that when he was free from pain that his mind was clear and that he took an active interest in what was going on in the world and was fully capable of transacting business.

The justice of the peace who took his acknowledgment to the deed in question and the deputy sheriff who accompanied him, both stated that Gray fully understood what he was doing at the time he executed the deed. Complaint is made that the justice of the peace brought a witness with him when he came to acknowledge the deed. The record does not show why he did this, but it is not shown that he did it from any bad motive. Be that as it may, both the justice of the peace and the deputy sheriff who accompanied him testified that although the old man was blind and ill, that they talked with him sufficiently to know that he fully realized what he was doing and that he wished to make the conveyance to his daughter.

Another friend of Mr. Gray, who had known him all his life, testified that although a man of but little education, he was a good business man. He stated that his mind was perfectly clear up to within a few days of his death, and that he was fully capable of transacting business at the time he executed the deed in question. This is the witness referred to above as stating that Gray expressed to him several years before his death that he wished to deed the house and lot in question to appellant as a token of his appreciation of her care for him.

The family physician of appellant testified that when called there he frequently saw Gray and talked with him, that he was fully capable of transacting business at the time he executed the deed in question. He stated that he talked with Gray a few days before his death and at that time he still retained his mental faculties and was able to tell about his condition and appreciated it. Three other physicians who knew Gray were propounded the hypothetical question based upon the evidence and stated that they were of the opinion that he fully understood what he was doing when he executed the deed in question.

We think a preponderance of the evidence shows that there was no undue influence on the part of appellant in procuring the deed and that Gray fully understood what he was doing when he executed the deed and that he was

only carrying out a preconceived plan on his part which had existed in his mind for several years prior to its execution. The conveyance was reasonable to the grantee and just to the grantor.

It follows that the decree of the chancellor will be reversed and the cause remanded with directions to dismiss the complaint of appellees for want of equity. It is so ordered.